## UNITED STATES v. RAILROAD COMPANY.

The tax provided for in the 122d section of the Internal Revenue Act of June 30th, 1864, as subsequently amended, in which section it is enacted that railroad and certain other companies specified, " indebted for money for which bonds shall have been issued . . . upon which interest is stipulated to be paid . . . shall be subject to and pay a tax of 5 per centum on the amount of all such interest," . . . is a tax upon the creditor and not upon the corporation. The corporation is made use of but as a convenient means of collecting the tax.

A municipal corporation is a portion of the sovereign power of the State, and is not subject to taxation by Congress upon its municipal revenues.

ERROR to the Circuit Court for the District of Maryland.

This case arose upon the identical 122d section of the Internal Revenue Act of 1864, as amended by that of 1866, which is discussed in the preceding case. The section enacts :

" That any *railroad*, canal, turnpike, canal navigation, or slackwater *company, indebted for any money for which bonds or other evidence of indebtedness have been issued, payable in one or more years after date, upon which interest is stipulated to be paid,* or coupons representing the interest, or any such company that may have declared any dividend in scrip or money due or payable to its stockholders, including non-residents, whether citizens or aliens, as part of the earnings, profits, income, or gains of such company, and all profits of such company carried to the account of any fund, or used for construction, *shall be subject to and pay a tax of* 5 *per centum on the amount of all such interest* or coupons, dividends or profits, whenever and wherever the same shall be payable, and to whatsoever party or person the same may be payable, including non-residents, whether citizens or aliens.

"*And said companies are hereby authorized to deduct and withhold from all payments on account of any interest* or coupons, and dividends, *due and payable as aforesaid, the tax of* 5 *per centum;* and the payment of the amount of said tax so deducted from the interest, or coupons, or dividends, and certified by the president or treasurer of said company, shall discharge said company from that amount of the dividend, or interest, or coupon on the

bonds or other evidences of their indebtedness so held by any person or party whatever, except where said companies may have contracted otherwise."

This is the material part of the section.   Another paragraph is, however, here presented, as it is spoken of in one of the opinions* in the preceding case, as assisting to interpret the parts that precede it.

"And a list or return shall be made and rendered to the assessor or assistant assessor, on or before the tenth day of the month following that in which said interest, coupons, or dividends become due and payable, and as often as every six months; and said list or return shall contain a true and faithful account of the amount of tax, and there shall be annexed thereto a declaration of the president or treasurer of the company, under oath or affirmation, in form and manner as may be prescribed by the Commissioner of Internal Revenue, that the same contains a true and faithful account of said tax.   And for any default in making or rendering such list or return, with the declaration annexed, or of the payment of the tax as aforesaid, the company making such default shall forfeit as a penalty the sum of $1000; and in case of any default in making or rendering said list or return, or of the payment of the tax or any part thereof, as aforesaid, the assessment and collection of the tax and penalty shall be made according to the provisions of law in other cases of neglect or refusal."

In the year 1854, and prior, of course, to the enactment of the said section, or indeed of any internal revenue statutes, the legislature of Maryland gave to the city of Baltimore (then desirous of aiding the Baltimore and Ohio Railroad Company in the construction of its road, which the city councils of Baltimore conceived would, if made, greatly benefit the city), authority to issue and sell its bonds to the extent of $5,000,000, payable in 1890; and to lend the proceeds to the railroad company, less 10 per cent., to be reserved as a sinking fund to pay the principal of the loan at its maturity.   This the city did, the railroad company in

* *Supra*, p. 305.

turn giving to it a mortgage on all its road, revenue, and franchises, to secure the payment of the bonds which the city had issued, and the interest which it had bound itself to pay.

After the passage of the internal revenue laws, the 122d section of which is above quoted, the government claimed payment from the company of a tax of 5 per cent., which the collectors of the Federal revenue alleged that under the plain language of the above-quoted 122d section, the company was bound to withhold from the city and pay to the United States. The company refused so to pay the 5 per cent. to the government, on the ground that the tax was not a tax laid on *it*, the company, but one laid on their creditor, the city of Baltimore, and that that city, being a municipal corporation, could not have its revenues taxed by the Federal government.

The United States accordingly sued the company, in the court below, in assumpsit.

The first count alleged that the company, by force of the provisions of the mortgage, became bound to pay to the city the interest on the loan, and that the company owed for tax on such interest $87,000.

The second count was for $87,000, money had and received. The defendant pleaded the general issue.

The court below gave judgment for the company, and the United States brought the case here, where it was fully argued March 12th, 1873, by—

*Mr. G. H. Williams, Attorney-General, and Mr. S. F. Phillips, Solicitor-General, for the plaintiff in error; Messrs. J. H. B. Latrobe and I. N. Steele, contra.*

And now, April 3d, 1873—

Mr. Justice HUNT delivered the opinion of the court.

The defendants insist, firstly, that the section in question does not lay a tax upon the corporations therein named, and by whom the tax is payable, upon their own account, but

uses them as a convenient means of collecting the tax from the creditor, or stockholder, upon whom the tax is really laid.   They insist as a consequence, secondly, that the present is a tax upon the revenues of the city of Baltimore; and, thirdly, that it is not within the power of Congress to tax the income or property of a municipal corporation.

1. The case of *The Railroad Company* v. *Jackson,** decided in 1868, and *Haight* v. *Railroad Company,*† are authorities in support of the first proposition.   In the case first mentioned, Jackson, an alien non-resident, sought to recover from the railroad company the amount of the tax of 5 per cent. imposed upon the interest of bondholders by the act of 1864, and withheld by the company.   A similar tax was imposed by the statutes of Pennsylvania.   The plaintiff claimed that as he was an alien non-resident, it was not in the power of Congress, or of that State, to tax him.   The courts of Pennsylvania had sustained the deduction.   Mr. Justice Nelson, in delivering the opinion of this court, and in remarking upon the decision of those courts, " that the deduction from the prescribed income of the interest on these railroad bonds, when paid by companies, was regarded as simply a mode of collecting this part of the income tax," says : " We concur in this view.   It is not important, however, to pursue this argument, as Congress has since, in express terms, by the acts of March 10th and July 13th, 1866, imposed a tax on alien non-resident bondholders.   The question will be hereafter not whether the laws embrace the alien non-resident holder, but whether it is competent for Congress to impose it."   In *Haight* v. *Railroad Company* it was held that a covenant by the corporation issuing the bond to pay the interest " without any deduction to be made for or in respect of any taxes, charges, or assessments," did not relieve Haight, who was a bondholder, from the deduction of the 5 per cent. authorized by the 122d section.   The court below said that " the measure of the company's liability is expressed in the bond as being debt and interest only.   It has nothing to do

---

* 7 Wallace, 262.                    † 6 Id. 17.

with the taxes which the government may impose on the plaintiff for the interest payable to him. . . . The plaintiff pays no internal revenue tax on these bonds at his place of residence. It is, therefore, no case of double taxation. The tax should be paid somewhere, and it was to meet investments like this, in banks, railroads, &c., that the 122d section was passed." This opinion was adopted in this court, Mr. Justice Grier saying: "The facts in this case are correctly stated, and the law properly decided by the learned judge of the Circuit Court."

This is a clear, distinct, unqualified adjudication, by the unanimous judgment of this court, that the tax imposed by the 122d section is a tax imposed upon the creditor or stockholder therein named; that the tax is not upon the corporation, and that the corporation is made use of as a convenient and effective instrument for collecting the same. It is a sequence in logical connection with that provision of section 117,* which specifies as the subjects of individual taxation all the earnings, profits, gains, and income from whatever source derived, and whether divided or not, *except* the amount derived from the sources indicated in the 122d section. Of the incomes specified in section 117 the individual must make specific returns, and be directly taxed thereon. Upon or for the incomes received from the sources mentioned in section 122 no tax is directly imposed upon the owner. That tax is to be returned by, and collected from, the corporation as his agent and instrument.

A tax is understood to be a charge, a pecuniary burden, for the support of government. Of all burdens imposed upon mankind that of grinding taxation is the most cruel. It is not taxation that government should take from one the profits and gains of another. That is taxation which compels one to pay for the support of the government from his own gains and of his own property.

In the cases we are considering the corporation parts not with a farthing of its own property. Whatever sum it pays

---

* See this section quoted *supra*, p. 295.

to the government is the property of another. Whether the tax is 5 per cent. on the dividend or interest, or whether it be 50 per cent., the corporation is neither richer nor poorer. Whatever it thus pays to the government, it by law withholds from the creditor. If no tax exists, it pays 7 per cent., or whatever be its rate of interest, to its creditor in one unbroken sum. If there be a tax it pays exactly the same sum to its creditor, less 5 per cent. thereof, and this 5 per cent. it pays to the government. The receivers may be two, or the receiver may be one, but the payer pays the same amount in either event. It is no pecuniary burden upon the corporation, and no taxation of the corporation. The burden falls on the creditor. He is the party taxed.

In the case before us this question controls its decision. If the tax were upon the railroad, there is no defence. It must be paid. But we hold that the tax imposed by the 122d section is in substance and in law a tax upon the income of the creditor or stockholder, and not a tax upon the corporation.

The creditor here is the city of Baltimore, and the question then arises whether this tax can be collected from the revenues of that municipal corporation.

There is no dispute about the general rules of law applicable to this subject. The power of taxation by the Federal government upon the subjects and in the manner prescribed by the act we are considering, is undoubted. There are, however, certain departments which are excepted from the general power. The right of the States to administer their own affairs through their legislative, executive, and judicial departments, in their own manner through their own agencies, is conceded by the uniform decisions of this court and by the practice of the Federal government from its organization. This carries with it an exemption of those agencies and instruments, from the taxing power of the Federal government. If they may be taxed lightly, they may be taxed heavily; if justly, oppressively. Their operation may be impeded and may be destroyed, if any interference is per-

mitted. Hence, the beginning of such taxation is not allowed on the one side, is not claimed on the other.

In the " Compendium of Internal Revenue Law," by Davidge & Kimball, it is said,* " Congress may not tax the revenues of a State,"† and also, " A national bank is not liable under the internal revenue laws to the tax upon dividends due a State on stock owned by the State."

Again :‡ " The term corporation as used in the acts of Congress touching internal revenue does not include a State, consequently the income of the State of Georgia from the Western and Atlantic railroad, property owned, controlled, and managed by that State, has not been made by law a subject of taxation."

Again, " The term person as used in §§ 9 and 44 does not include a State. The receipts or certificates issued by the State of Alabama are not subject to the tax of 10 per cent. imposed by the act of Congress of March 25th, 1867."§

The inquiry then arises, what is the nature and character of municipal corporations, and what is their connection with the government of the State.

A work on corporations says,‖ that inferior and subordinate communities, *imperia in imperio*, such as cities and towns, . . . are allowed to assume to themselves some of the duties of the State in a partial or detailed form, but having neither property nor power for the purposes of personal aggrandizement, they can be considered in no other light than as auxiliaries of the government, and as the secondary deputies and trustees and servants of the people.¶

It is said further by the same authority, the main distinction between public and private corporations is, that over the former the legislature, as guardian of the public inter-

---

* Page 505; citing Sayles *v.* Davis, 22 Wisconsin, 229.

† Page 485; citing 12 Opinions of the Attorneys-General, 402.

‡ Page 471; citing State of Georgia *v.* Atkins, Collector, 8 Internal Revenue Record, 113.

§ 12 Opinions of the Attorney's-General, 176.

‖ Angel & Ames on Corporations, § 16 *et seq.*

¶ 2 Kent, 4th ed. 274, and De Tocqueville Democratie, 1, 64, 96.

ests, has the exclusive and unrestrained control; and acting as such, as it may create, so it may modify or destroy, as public exigency requires or recommends, or the public interest will be best subserved. It possesses the right to alter, abolish, or destroy all such institutions, as mere municipal regulations must, from the nature of things, be subject to the absolute control of the government.* "Such institutions (it is added) are auxiliaries of the government in the important business of municipal rule."

A municipal corporation like the city of Baltimore, is a representative not only of the State, but is a portion of its governmental power. It is one of its creatures, made for a specific purpose, to exercise within a limited sphere the powers of the State. The State may withdraw these local powers of government at pleasure, and may, through its legislature or other appointed channels, govern the local territory as it governs the State at large. It may enlarge or contract its powers or destroy its existence. As a portion of the State in the exercise of a limited portion of the powers of the State, its revenues, like those of the State, are not subject to taxation. This proposition is very properly admitted by the counsel for the government. In their brief it is said, "We admit that municipal corporations, acting merely within the scope of their duties as such, are not to be included within general words imposing taxes upon persons or corporations." In support of this view is cited the proviso to the amendment in 1866, in these words: "Provided that it is the intent hereby to exempt from liability to taxation such State, county, town, or other municipal corporation, in the exercise only of functions strictly belonging to them in their ordinary governmental and municipal capacity."

Assuming for the argument that this qualification is well made, let us look at the facts of the case before us. The city of Baltimore, with a view to its commercial prosperity, was desirous of aiding in the construction of a railroad, by

---

* Angel & Ames on Corporations, § 31.

which the commerce and business of the Western States would be brought to that city. For this purpose it was authorized by the legislature to issue its corporate bonds for $5,000,000, on which it was to obtain the money. The proceeds of these bonds, reserving 10 per cent. as a sinking fund, were to be paid to the railroad company. To secure the city against loss and to provide for the payment of the interest on the bonds of the city as it should, from time to time mature, and of the principal when payable, the railroad company were to execute a mortgage to the city upon its road and franchises and revenues. All this was done as agreed upon. The interest, secured by this mortgage, has, from time to time, been paid by the railroad company to the city, and it is a tax (under the 122d section before referred to) upon the interest thus paid, that the plaintiff now seeks to recover.

That the State possessed the power to confer this authority upon the city, we see no reason to doubt.*

Was it exercised for the benefit of the municipality, that is in the course of its municipal business or duties? In other words, was it acting in its capacity of an agent of the State, delegated to exercise certain powers for the benefit of the municipality called the city of Baltimore? Did it act as an auxiliary servant and trustee of the supreme legislative power? The legislature and the authorities of the city of Baltimore decided that the investment of $5,000,000 in aid of the construction of a railroad, which should bring to that city the unbounded harvests of the West, would be a measure for the benefit of the inhabitants of Baltimore and of the municipality. This vast business was a prize for which the States north of Maryland were contending. Should it endeavor by the expenditure of this money or this credit to bring this vast business into its own State, and make its commercial metropolis great and prosperous, or should it refuse to incur hazard, allow other States to absorb this commerce, and Baltimore to fall into an inferior position?

---

* *Gelpcke v. Dubuque*, 1 Wallace, 202; *Rogers v. Burlington*, 3 Id. 664.

This was a question for the decision of the city under the authority of the State.  It was a question to be decided solely with reference to public and municipal interests.  The city had authority to expend its money in opening squares, in widening streets, in deepening rivers, in building common roads or railways.   The State could do these things by the direct act of its legislature, or it could empower the city to do them.   It could act directly or through the agency of others.   It is not a question to be here discussed, whether the action proposed would in the end result to the benefit of the city.   It might be wise, or it might prove otherwise. The city was to reap the fruits in the advanced prosperity of all its material interests, if successful.   If unsuccessful, the city was to bear the load of debt and taxation, which would surely follow.   The city had the power given it by the legislature to decide the question.   It was within the scope of its municipal powers.

This advance of the city bonds was not a donation.   It was an investment supposed to be judiciously made and adequately secured.   It was not for the individual benefit of those managing the business.   No one received advantage except as he was a citizen or his property was within the city.   It was not a loan for the benefit of the railroad; it was for the benefit of the city solely.   That the railroad company was also benefited did not affect the purpose of the transaction.

It is said by the counsel for the United States that municipal corporations are those that are created irrespective of those who are associated therein, and that the powers are given and withheld upon grounds which concern the public at large.   It is not necessary to discuss the question whether this city is a municipal corporation.   If there can exist a municipal corporation, as that expression is generally understood, the cities of this country, like Baltimore, Philadelphia, and New York, fall within the definition.   The power in question was conferred because its exercise concerned the public and to benefit that public.   This power could no doubt have been imposed upon the city as a duty, and its

exercise directed without the assent or against the wish of the corporation or its citizens. The State could do it directly for and on behalf of the city, and without its intervention. The city could act only by authority from the State. The State is itself supreme, and needs no assent or authority from the city. It is not perceived that the act is less public and municipal in its character than if the State had compelled the city to lay the tax and to make the appropriation of the proceeds to the railroad company. In *The Town of Guilford* v. *The Board of Supervisors of Chenango County*,\* it was held:

1. That the legislature has power to levy a tax upon the taxable property of a town, and appropriate the same to the payment of a claim made by an individual against the town.

2. That it is not a valid objection to the exercise of such power, that the claim to satisfy which the tax is levied is not recoverable by action against the town.

3. That it does not alter the case that the claim has been rejected by the voters of the town, when submitted to them at a town meeting, under an act of the legislature authorizing such submission and declaring that their decision should be final and conclusive.

The action is no less a portion of the sovereign authority, when it is done through the agency of a town or city corporation.

We admit the proposition of the counsel, that the revenue must be municipal in its nature to entitle it to the exemption claimed. Thus, if an individual should make the city of Baltimore his agent and trustee to receive funds, and to distribute them in aid of science, literature, or the fine arts, or even for the relief of the destitute and infirm, it is quite possible that such revenues would be subject to taxation. The corporation would therein depart from its municipal character, and assume the position of a private trustee. It would occupy a place which an individual could occupy with equal propriety. It would not in that action

---

\* 3 Kernan, 143.

be an auxiliary or servant of the State, but of the individual creating the trust.   There is nothing of a governmental character in such a position.   It is not necessary, however, to speculate upon hypothetical cases.   We are clear in the opinion that the present transaction is within the range of the municipal duties of the city, and that the tax cannot be collected.

Judgment affirmed.

Mr. Justice BRADLEY:

I concur in the judgment of the court in this case, without deciding whether Congress can or cannot tax the property of municipal corporations.   I concur in the judgment on the ground that Congress did not intend by the internal revenue laws to tax property belonging to the States or to municipal corporations.   This is apparent from the language of the 116th section of the Internal Revenue Act of 1864.   I also concur in the construction given by the opinion to the Internal Revenue Act, that the tax imposed by the 122d section of that act was substantially a tax on the stock and bond-holders, and not on the railroad or canal companies.

Mr. Justice CLIFFORD (with whose dissent and views concurred Mr. Justice MILLER), dissenting:

I dissent from the opinion and judgment of the court.

Property owned by a municipal corporation and used as means or instruments for conducting the public affairs of the municipality may not be subject to Federal taxation, as it may perhaps be regarded as falling within the implied exemption established by a recent decision of this court.*

Well-founded doubts, however, may arise even upon that subject, as the tax in that case was levied directly upon the salary of a judicial officer, and the opinion of the court is carefully limited to the case then before the court.   But concede, for the sake of the argument, that the means and instruments for conducting the public affairs of the munici-

---

* The Collector *v.* Day, 11 Wallace, 113.

pality are entitled to the same exemption from such taxation as the revenues of the State, it by no means follows that the private property owned by such a corporation, and held merely as private property in a proprietary right, and used merely in a commercial sense for the income, gains, and profits, is not taxable just the same as property owned by an individual, or any other corporation. Such a right is one which may be of great value to the government in time of war and imminent public danger, and one which the United States ought never to surrender.

Corporations of the kind are very numerous and they may and often do own large amounts of bank stock, bonds, and stocks of railroads, vacant lots and other real estate of great value, and many other species of personal property and choses in action never used or intended to be used as means or instruments for conducting the public affairs of the municipality, and in respect to all such property the right of Congress to pass laws subjecting the same to taxation with the property of the citizens generally is as clear, in my judgment, as it is that the power to lay and collect taxes, duties, imposts, and excises is vested by the Constitution in the national legislature.*

It was decided by this court, in the case of *Vidal* v. *Girard's Executors*,† that the corporation of the city of Philadelphia had the power under its charter to take real and personal estate by deed and also by devise, inasmuch as the English statute which excepted corporations from taking such properties in the former mode was not in force in that State; that where a corporation has this power it may take and hold property in trust in the same manner and to the same extent as a private person may do, even though the trust is not strictly within the scope of the direct purposes of the charter of the municipality.

Ten years later this court affirmed that same rule in the

---

\* McCulloch *v.* Maryland, 4 Wheaton, 434; Louisville *v.* Commonwealth, 1 Duvall, 295; National Bank *v.* Commonwealth, 9 Wallace, 353; Veazie Bank *v.* Fenno, 8 Id. 533.

† 2 Howard, 127.

case of *The Executors of McDonogh* v. *Murdoch** which gave three millions of dollars to the city of Baltimore and more than a half-million of dollars to the city of New Orleans. Both of those corporations, it was held in that case, were empowered to take the property by devise, as the laws of the respective States do not prohibit such dispositions of prop-.erty in their favor, affirming the principle that such corporations may take real and personal estate by deed or devise, and that they hold such property in trust in the same manner and to the same extent as private persons, and the statistics will show that such corporations have become the grantees or devisees of vast amounts of personal and real estate, and that many of them still hold and enjoy the same for the income, rents, and profits.

Apply the rule here suggested to the case before the court and it is clear, whether it be held that the tax was levied upon the municipal corporation or the railroad company, that the judgment should be reversed.

### NOTE.

Soon after the opinion of the court in the preceding case was delivered, a motion was made by Messrs. *Gowen, Biddle, and Cuyler,* the counsel of the different railroad companies, in the case of *Barnes* v. *Railroad Companies,* decided five weeks before it, for a rehearing of that case; the grounds of the motion being the obvious and irreconcilable contradiction between the language in one of the opinions given in the first case (see *supra,* pp. 302–3, 309), which opinion the learned counsel assumed to be the opinion of the court—and the opinion of the court in the second case (see *supra,* pp. 326–7); a contradiction which the counsel exhibited by a juxtaposition of passages in the two opinions.

And now, April 28th, 1873, the Chief Justice announced the order of the court               DENYING THE MOTION.†

---

* 15 Howard, 367.

† No reasons were assigned for the order. The reader will have perceived, probably, that notwithstanding the inconsistency of language in the

---

opinion relied on by counsel in the former case, with that expressing the opinion of the court in the latter, the *judgments of the court* in the two cases are in no way inharmonious. And the Reporter has already noted in his syllabus of the former case that the judgment in it was given by a court nearly equally divided, and that the majority of the court who agreed in the judgment did not agree in the grounds of it.