# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1878.

JOHN DARLING and STEPHEN A. MORSE *vs.* THE
MAYOR AND CITY COUNCIL OF BALTIMORE.

*When an Injunction will not be granted to restrain the Execu-
tion of a Judgment on the ground of alleged Fraud and
Surprise—Plea of Former Recovery—A party to a Proceed-
ing bound to be present in Court in Person or by Attorney—
When Equity will not relieve against a Judgment at Law—
Execution cannot issue against a Municipal Corporation—
Enforcement of Judgments against a Municipal Corporation
by Mandamus—Construction of the Act of 1876, ch. 367—
Levy on Assessable Property of a Municipal Corporation to
satisfy a Judgment against it.*

The fact that the appellee's attorney, who tried a case for the appellee
in the Baltimore City Court, wherein the appellant D., was plaintiff
and the appellee defendant, did not know of the existence of a for-
mer judgment recovered by the appellant D., after process duly
served on the proper official of the appellee, against the said ap-
pellee, on an alleged identical cause of action before a justice of
the peace, would not of itself entitle the defendant in the judgment
rendered by the justice, to an injunction to restrain the execution of
such judgment, on the ground of fraud and surprise.

If the suit in the Baltimore City Court was for the same cause of ac-
tion as that on which the judgment was rendered by the justice, that
fact ought to have been availed of by the appellee, by a plea of
former recovery.

A party to a proceeding is bound to be present in Court, either in
person or by an attorney to take care of his rights, and attend to
their due prosecution, and he cannot make the omission to perform

this duty, of itself, the foundation for an injunction. There is nothing in the nature of a corporation entitling it to be made an exception in the application of this reasonable and most salutary rule.

If a defendant in an action against him, has within his power the means of defence and neglects to use them, and suffers a recovery to be had against him, he is forever precluded from obtaining relief in a Court of equity in respect to such defence. A Court of equity will never relieve a party against a judgment at law, unless the justice of the recovery can be impeached by facts, or on grounds of which the complainant could not have availed himself at law, or was prevented from doing so by fraud or accident, or the act of the opposite party, unmixed with any negligence or fault on his own part.

All the property held by a municipal corporation like the appellee, is held for the public uses, and for the benefit of the population subject to. the municipal jurisdiction, and an execution on judgment against a municipal corporation will not lie.

The writ of *mandamus* can be issued against a municipal corporation to enforce the payment of a judgment rendered by a justice of the peace as well as one rendered by a Court of law; such payment to be enforced by means of a levy made, under the authority of the Act of 1876, ch. 367, upon the assessable property of such municipality sufficient to pay such judgment.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree of the Court below (GILMOR, J.,) making perpetual an injunction to restrain the appellants from levying an execution, in the nature of a *fi. fa.*, upon the property held and owned by the appellee. It appears from the bill of complaint, that the judgment on which this execution was issued was for $100, and costs, and was rendered against the appellee in favor of the appellant Darling by Henry W. Staylor, justice of the peace, on the 13th September, 1875, in a cause of action which is declared in the warrant issued in said case, to be for wrongfully and illegally dispossessing Darling of a stand occupied by him in Bel Air Market, on or about the 21st August, 1875, the said Darling being

a licensed vendor of salted meats and bacon, and having been ejected from said market by one of the market clerks of the appellee; that the appellee's solicitor did not defend the suit, and had no knowledge of such judgment until the issue of execution thereon in November, 1876, and being then notified by the appellant Morse, a constable, that he would proceed to levy the same on the appellee's property unless prevented by law. It further appears from said bill of complaint, that after having obtained the judgment above mentioned, the appellant Darling had sued the appellee in the Baltimore City Court, for an alleged trespass committed by the same market clerk in wrongfully and maliciously dispossessing the said Darling of his market stand on or about the 11th September, 1875, laying his damages at $2500, and at the trial of this case the appellant Darling testified to several trespasses committed upon his person by the market clerk, among which he specified the trespass of the 21st August, 1875, for which he had recovered damages before Staylor, justice of the peace; he made no mention in his testimony, however, of having obtained such a judgment, the existence of which he concealed also from his counsel engaged in the trial of his case; and that in this case judgment was given against the appellee on the 13th November, 1876, for $50 and costs, and a few days afterwards was satisfied by the appellee; and it was after the payment of this judgment, that the appellee was first made aware, by the issue of execution, of the judgment previously obtained before Staylor, justice of the peace.

The bill of complaint charged, that the appellant Darling had been guilty of fraud, in withholding from the jury, when he testified in his case in the Baltimore City Court, the fact of his having already recovered damages for the trespass of the 21st August, 1875, and that the judgment in question ought not to be enforced by execution against the property of the appellee, because

such property is held by a public, political and municipal corporation of the State of Maryland, for corporate purposes only, and is not subject to execution.

To this bill on which the injunction was granted, the appellants answered and demurred, and moved to dissolve the injunction. Testimony was taken by agreement; the demurrer was afterwards withdrawn by the appellants, who filed an amended answer. The cause was heard on motion to dissolve, and on the bill, answers and testimony the Court below made the injunction perpetual; from which decree Darling and Morse, constable, appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*Thomas R. Clendinen* and *Thomas G. Hayes*, for the appellants.

The testimony taken on the part of the appellee in this cause, (and the appellant Darling took no testimony,) shows that Darling referred, in the trial of the case in the Baltimore City Court, to the trespass of August 21st, 1875, solely for the purpose of showing the malice of the defendant, and not as the date of one of the trespasses for which he sought recovery in that action. The action in the City Court was for a trespass on the 11th September, 1875. It was proof legitimate to show the *animus.*

"Any acts or declarations of the defendant indicative of the existence of malice or ill will on the part of the defendant towards the plaintiff at the time of the wrong done, and which may have prompted the act complained of, may be given in evidence to characterize the injury and to aggregate the damage." 2 *Greenleaf's Evidence,* sec. 89; *Shafer vs. Smith,* 7 *H. & J.,* 67; *Byers vs. Horner,* 47 *Md.,* 31.

This judgment of August 21st, 1875, was a judgment against the Mayor and City Council of Baltimore, rendered

after due summons and trial, and they are presumed to have known of the existence of said judgment for the trespass of August 21st, 1875, at the time of the trial of the case in the City Court for the trespass of 11th September, 1875; and if they desired the jury to know of said judgment, their solicitor could have brought it out in the trial of the case in the City Court.

These appellants submit, that it is well established, both by principle and authority, that "the private property of municipal corporations not charged with public uses and trusts may be sold on execution." 2 *Dillon on Municipal Corporations*, secs. 446, 546; *U. S. vs. B. & O. R. R. Co.*, 17 *Wallace*, 330; *City of Louisville vs. Commonwealth*, 1 *Duvall*, 298; *Bailey vs. M. & C. C. of N. Y.*, 3 *Hill*, 531; *Holladay vs. Frisbie*, 15 *Cal.*, 635; *City of New Orleans vs. Home M. Ins. Company*, 23 *La. An.*, 62; *Gooch vs. Gregory*, 65 *N. C.*, 143; *Rittenhouse vs. M. & C. C. of Balt.*, 25 *Md.*, 346; *W. F. S. Society vs. City of Phila.*, 31 *Pa.*, 175.

The Mayor and City Council of Baltimore, by the express terms of its charter, is liable to be sued. The language of its charter, viz: "may sue and be sued;" and as a necessary result of this liability to suit, is the equally necessary liability of having a judgment rendered against it in any Court of competent jurisdiction where said corporation may be sued.

It is provided by statute, that "on all judgments rendered in any Court of law, an execution may issue." The right to recover a judgment carries with it, in the absence of statutory prohibition, the right to issue an execution on the judgment so recovered. *Code, P. L. L., Art.* 4, *sec.* 1; 1874, *ch.* 320; 2 *Dillon on Municipal Corporations, sec.* 446, *p.* 547; *City of Davenport vs. Insurance Company*, 17 *Iowa*, 276, 280, 282.

The Mayor and City Council of Baltimore has ample power conferred upon it by its charter to hold property

for purposes other than for municipal and public purposes, for, by the express terms of its charter, it may hold property as a general corporation. *Code, P. L. L., Art.* 4, *secs.* 1, 2.

It has been expressly decided that the power conferred upon the M. & C. C. of Baltimore to "*erect and regulate markets,*" confers a power and creates a liability to be exercised as a private person or corporation. *Code, P. L. L., Art.* 4, *sec.* 61; *M. & C. C. of Balt. vs. Brannan,* 14 *Md.,* 236.

The fact is, whether the charter confers the power or not, that the Mayor and City Council of Baltimore does own property in a private capacity, and not used nor subject to municipal or public uses or functions. This fact is conceded under the pleadings; and it is submitted, this being the fact, that the Mayor and City Council of Baltimore cannot screen this private property from the execution of one of its judgment-creditors by averring that its charter did not authorize such holding.

*Thomas W. Hall* and *James L. McLane,* for the appellee.

1st. The certain effect of Darling's testimony before the jury in the second case was to secure him damages twice for one and the same injury, Whether he testified to the trespass of August 21st as a trespass for which he was seeking compensation in the second suit, or only to influence damages by showing malice, his offence was the same. Testifying in his own behalf, and about matters peculiarly within his own knowledge, he was bound to tell the whole truth. Instead of doing so, he described a series of trespasses, committed upon him by the clerk of the market, an officer of the city, and particularly the trespass of August 21st; but he carefully and deliberately withheld and concealed from the jury, and every one else engaged in the trial of the case, the all-important fact that, at that very time, he "had in his pocket-book" a

judgment for one hundred dollars and costs against the defendant for the trespass of August 21st. This was equivalent to an abandonment of his magistrate's judgment, and an attempt to have his damages assessed a second time by the jury; and it would be grossly unjust to permit him now to fall back upon his concealed judgment. Against such a judgment the appellee was entitled to relief by injunction. *Kearney vs. Sascer,* 37 *Md.,* 264; 2 *Story's Eq. Jurisp., secs.* 887, 894; *Kerr on Injunctions,* 52, 54; *Marine Ins. Co. vs. Hodgson,* 7 *Cranch,* 336; *Huston, et al. vs. Ditto, et al.,* 20 *Md.,* 325; *Hill vs. Reifsnider, et al.,* 46 *Md.,* 563.

2nd. But apart from the fraud attaching to the appellant's judgment, he clearly mistook his remedy. He should have enforced payment of his judgment by a writ of *mandamus,* and not by *fieri facias.*

In the absence of express statute, the property of a municipal corporation cannot be taken in execution on *fieri facias. Phillips on Mechanic's Lien, secs.* 459, 460; *Chicago vs. Hisley,* 25 *Ill.,* 595; *Foster vs. Fowler,* 60 *Penn. State,* 27; *City of Kinmendy vs. Mahan,* 72 *Ill.,* 462; *City of Bloomington vs. Brokaw,* 77 *Ill.,* 194; *Board of Trustees vs. Shroeder,* 58 *Ill.,* 353; 2 *Dillon on Mun. Corporations, secs.* 446, 685; 1 *Dillon on Mun. Corp., secs.* 64, 65; 37 *Penn. St.,* 277, 290; 43 *Penn. St.,* 400; 16 *Wis.,* 196; 20 *Wis.,* 87.

While this Court has never had occasion to decide the precise question presented by this appeal, it has, by a long train of decisions, laid down principles which lead irresistibly to the conclusions maintained by the appellee.

It is well settled that the municipal corporation of the City of Baltimore is a public corporation, created by the State for political purposes, with political powers to be exercised for purposes connected with the public good in the administration of civil government. A mere instrument of government appointed to aid in the administration

of public affairs. A part of the State government exercising delegated political powers for public purposes. *Regents of University of Md. vs. Williams,* 9 *G. & J.,* 365, 397; *Mayor, &c. of Balt. vs. Root,* 8 *Md.,* 95; *Mayor, &c. of Balt. vs. State,* 15 *Md.,* 463; *Ridgely, et al. vs. Wilson,* 46 *Md.,* 235; *Merrick, Adm'r vs. Mayor, &c. of Balt.,* 43 *Md.,* 226; *Norris, et al. vs. Mayor, &c. of Balt.,* 44 *Md.,* 598.

Created as an agency of government, the municipality cannot have that complete and absolute control and power of disposition of its property which is possessed by natural persons and private corporations in respect to their several possessions; for it can hold and own property only for corporate purposes. *Cooley on Cons. Lim.,* (235;) 10 *How.,* 534; *U. S. vs. B. & O. R. R.,* 17 *Wall.,* 322; *Mayor, &c. of Hagerstown vs. Sehner,* 37 *Md.,* 193; *Code, P. L. L., Art.* 4, secs 1, 2.

In the case of *United States vs. Railroad Company,* 17 *Wallace,* 322, 330, 331, the attempt was made to distinguish between property held by the City of Baltimore, in the exercise of its strictly governmental and municipal functions, and that held by it as an investment. So far as property of the former kind was concerned, it was conceded that the federal taxation could not apply. But the Supreme Court of the United States held that the mortgage held by the city, to secure its five million loan to the Baltimore and Ohio R. R. Co., was property owned and held by the city for municipal purposes. The only test applied by the Court was whether the property in question was such as the Legislature of the State had authorized the city to acquire.

The rule is, that the municipal corporation can hold no property without the consent and authority of the State government; and what it thus holds is held absolutely for municipal purposes, or for public trusts, sanctioned by the particular laws authorizing such holding. In either

case it acts as the agent of the State. A judgment creditor has a complete remedy, by *mandamus,* to enforce payment by the city. *Watts vs. President, &c.,* 46 *Md.,* 504; *Norris, et al. vs. Mayor, &c. of Balt.,* 44 *Md.,* 608.

The Act of 1876, ch. 367, indicates, very clearly, in what manner the Legislature understands and intends that the claims of judgment creditors are to be enforced against municipal corporations.

ALVEY, J., delivered the opinion of the Court.

As it is neither alleged in the bill nor pretended as matter of fact, that the judgment before the justice of the peace, (the execution on which is sought to be restrained,) was recovered without process duly served on the proper city official, there is an entire failure of evidence to sustain the application for an injunction upon the ground of fraud and surprise. It is alleged, it is true, that the judgment was rendered *ex parte,* but that was the fault of the appellee. Having been duly served with process it was the duty of the appellee to have attended before the justice at the time and place designated, and there availed itself of all defences then existing. Nor can the judgment subsequently recovered against the appellee in Baltimore City Court be questioned or impeached in the way proposed. If it be true that it was for the same cause of action as that upon which the former judgment before the justice was rendered, that fact ought to have been availed of by a plea of former recovery. The fact that the attorney of the city, who tried the case in Baltimore City Court, did not know of the existence of the former judgment, can make no difference. The corporation was bound to take notice of the fact; and the want of knowledge on the part of its attorney is no excuse for the failure to make the available defences at the proper time and place. It is well settled that a party to a proceeding is bound to be present in Court, either in person or by an attorney, to

take care of his rights, and attend to their due prosecution, and that he cannot make the omission to perform this duty, of itself, the foundation for an injunction. *Gott vs. Carr,* 6 *Gill & John.,* 309. And there is nothing in the nature of a corporation entitling it to be made an exception in the application of this reasonable and most salutary rule. It is also an established principle, that if a defendant has the means of defence within his power, in an action against him, and neglects to use them, and suffers a recovery to be had against him, he is forever precluded from obtaining relief in a Court of equity in respect to such defence. A Court of equity will never relieve a party against a judgment at law, unless the justice of the recovery can be impeached by facts, or on grounds of which the complainant could not have availed himself at law, or was prevented from doing so by fraud or accident, or the act of the opposite party, *unmixed with any negligence or fault on his own part;* for a party can never be entitled to the aid of a Court of equity when that aid becomes necessary by his own fault or negligence. *Gott vs. Carr,* 6 *G. & J.,* 309; *Dilly vs. Barnard,* 8 *Gill & John.,* 170. Here there is an entire failure of evidence to show that, by due and proper diligence, the former judgment could not have been produced and used as a defence to the action in Baltimore City Court, if the two cases were really founded on one and the same cause of action. It is proper to say, however, that, from the facts disclosed in this record, it would be difficult to conclude with any degree of certainty that the two judgments were founded on the same cause of action.

The alleged ground of fraud and surprise failing the appellee, the next proposition presented and relied on is, that an execution cannot be rightfully issued against a municipal corporation, on a judgment for debt or damages recovered against it. And whether such proposition, in the unqualified form stated, can be maintained, is a ques-

Darling & Morse *vs.* Mayor & C. C. of Balto.

tion of more than ordinary importance, and one in regard to which there exists a considerable diversity of opinion among those who have had occasion to consider it, in the Courts of some of our sister States. The question is now presented to this Court for the first time, and we must decide it, not upon precedent, but upon such reason and principle as we take to be applicable and controlling in the case.

As we understand the counsel for the appellants, it is not contended that an execution could be issued against a municipal corporation and be levied upon property owned or used by it for purely public purposes; such as a court-house, jail, alms-house, city or town-hall, police station-houses, market-house, fire engines, &c. But it is contended that municipal corporations may hold, and that Baltimore City does hold, property in a private or *quasi* private character, not necessary to the execution of the public municipal functions of the corporation, and that such property is liable to execution, on a judgment recovered against the corporation, in the same manner that it would be in the hands of an individual judgment debtor.

The corporation of the City of Baltimore, by its charter, (*2nd vol. Code, Art.* 4, *secs.* 1 *and* 2,) is declared to be entitled to "purchase and hold real, personal and mixed property, or dispose of the same for the benefit of said city;" and that "all the property and funds of every kind belonging to, or in possession of the City of Baltimore, are vested in the said corporation; and the said corporation may receive in trust, and may control for the purposes of such trusts, all money or other property which may have been, or shall be, bestowed upon such corporation by will, deed or in any other form of gift or conveyance, in trust for any general corporation purpose, or in aid of the indigent and poor, or for the general purposes of education, or for charitable purposes of any description within the

said city; and the said corporation may lease or otherwise dispose of any property belonging to the said city," &c.

As has been correctly said a municipal corporation like the City of Baltimore, is a representative not only of the State, but is a portion of its governmental power. It is one of its creatures, made for a specific purpose, to exercise within a limited sphere the powers of the State. *United States vs. Balto. and Ohio R. R. Co.,* 17 *Wall.,* 322; *Mayor, &c. of Balto. vs. Police Board,* 15 *Md.,* 376, 462. It is therefore incorporated for public and not private objects; and it is invested with privileges and allowed to hold property for the purposes mentioned in its charter. And in construing the power of the City of Baltimore to hold property under its charter, it was said by the Supreme Court, in the case of *McDonogh vs. Murdock,* 15 *How.,* 367, 413, that "All the property of a corporation like Baltimore is held for public uses, and when the capacity is conferred or acknowledged to it to hold property, its destination to a public use is necessarily implied." It is true, there is a distinction taken, and, for some purposes, well maintained by the authorities, between property acquired for public municipal purposes exclusively, which is vested in or appertains to the corporation in its public, political or municipal character, and which may be essential to the complete performance of its public functions, and property acquired and held by it not essential to the discharge of ordinary public municipal functions, but for the ease and accommodation of the public within the corporate limits.  For instance, the supply of water or gas light to the entire population of a city is not essentially a public municipal function; for the supply of water or gas may be furnished by an independent corporation or by an individual as well as by the municipal corporation itself.  It is no part of the duty of the State, through its municipal organizations, to supply these things to the people.  Yet it is a common thing for

the corporations of cities and towns to be clothed with authority to construct works at great cost, and the cost to be defrayed by taxation, for the supply of both water and gas to the population. So, such corporations may hold wharves and other property for the facility and encouragement of trade; though all such interests are generally acquired and held under special grants of power. And while property thus held may yield gain and profit to the city, it subserves the convenience and is for the accommodation of the public. As illustrative of the distinction stated between property held as purely public, and used only for those purposes of municipal government in which the State is interested, and property held by such corporation not so used, the case of *Rittenhouse vs. The Mayor, &c. of Baltimore,* 25 *Md.,* 336, and the cases therein referred to of *Bailey vs. The Mayor, &c. of New York,* 3 *Hill,* 531; *Masterton vs. The Mayor, &c. of Brooklyn,* 7 *Hill,* 61; and *The Western Saving Fund Society vs. Philadelphia,* 31 *Penn. St.,* 175 *and* 185, may be consulted. It is in view of the distinction maintained by these authorities, and several others that might be referred to, that it is contended that an execution may issue on a judgment against the corporation, and be levied on such property as the corporation may hold in what is supposed to be its *quasi* private character.

But, notwithstanding the distinction just stated, all the property held by the corporation is, as we have seen, when considered in an enlarged sense, held for public uses and benefits. It is not pretended, of course, that it would be competent, under an execution against the corporation, to seize any property held in trust by it; and all other property that it holds, not used in the exercise of its public municipal functions, is held for the general benefit and advantage of the population subject to the municipal jurisdiction. In the case of the *United States vs. The Balto. & Ohio R. R. Co.,* 17 *Wall.,* 322, before referred to, it was held

that the city funds invested in a loan to the railroad company were exempt from taxation, under the United States revenue law, upon the distinct grounds that the loan itself was a municipal act, and that the money due the city was public municipal property; and as the municipal corporation was an agency, and a part of the State governmental power itself, it could not therefore be taxed. But without saying that all the property held by the city is of a strictly municipal character, that is to say, essential to the performance of public municipal functions, yet, if the city funds invested in a loan to a railroad company can be so far regarded as public property, because belonging to a municipal corporation, as to be exempted from taxation, *a fortiori* should that property and all other property held by the municipality be exempt from execution on judgment against the corporation. Indeed, it would be attended with the most serious consequences, and involve the greatest amount of inconvenience, to lay it down as a rule that any property belonging to a municipal corporation, not actually used in the discharge of its public functions, could be levied upon and sold under ordinary execution, as upon judgment against a private corporation. Both upon principle and the reason of the thing therefore, we conclude that an execution on judgment against a municipal corporation will not lie.

And we thus conclude the more readily because the law does not leave the creditor without ample remedy against the corporation. By the Act of 1876, ch. 367, it is provided that any municipal corporation in this State, against which there may be a judgment recovered in a Court of law, shall have power to levy a sum of money upon the assessable property of such municipality sufficient to pay such judgment. And for the purposes of the remedy in such cases, a judgment rendered by a justice of the peace may well be regarded as a judgment rendered by a Court of law. It cannot be supposed that the Legislature de-

O'Brian & Co. *vs.* County Comm'rs of Balto. Co.

signed to exclude such judgments from the purview of the Act. And it being made the duty of the corporation or those in control of its government to levy a tax for the payment of the judgment, if refused to be performed, that duty can and will be enforced by *mandamus.* *Watts vs. President, &c. of Port Deposit,* 46 *Md.,* 500 ; *Supervisors vs. United States,* 4 *Wall.,* 435 ; *City of Galena vs. Amy,* 5 *Wall.,* 705.

That part of the decree appealed from which makes perpetual the injunction against all proceeding under the execution is affirmed ; but that part of the decree which forbids and enjoins all further proceedings upon the judgment against the appellee must be reversed.

*Decree affirmed in part, and*
*reversed in part.*