THE UNITED STATES ex rel. HUFTY

*v.*

TRIMBLE.

WAR REVENUE ACT; STAMP TAX; TAX CERTIFICATES.

No stamp is required by the War Revenue Act of Congress of June 13, 1898, to be affixed to a tax certificate issued under the provisions of the act of Congress of May 13, 1892; and *mandamus* will lie to compel the assessor of the District of Columbia to issue such a certificate to a party applying for it, when the only ground of his refusal to do so is the refusal of such party to furnish him with a war revenue stamp to be affixed thereto and canceled by him.

No. 867. Submitted March 10, 1899. Decided March 24, 1899.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia, dismissing a

petition for a writ of *mandamus* against the assessor of the District of Columbia.  *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Arthur Peter* and *Mr. Malcolm Hufty* for the appellant.

*Mr. Henry E. Davis*, U. S. Attorney for the District of Columbia, and *Mr. Ashley M. Gould*, Assistant, for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The relator, Malcolm Hufty, is a citizen of the United States, residing in the District of Columbia, and the respondent, Mathew Trimble, is the assessor of said District.

On November 16, 1898, relator, having sold Lot 120, in Square 190, of the city of Washington, paid to the respondent the fee required by law, and demanded a certified statement of the taxes due thereon, in accordance with the provisions of the Act of Congress approved May 13, 1892, which reads as follows:

" That it shall be the duty of the assessor for the District of Columbia to prepare and keep in his office, for public inspection, a list of all real estate in the District of Columbia heretofore sold, or which may hereafter be sold, for the non-payment of any general or special tax or assessment levied or assessed upon the same, said list to show the date of sale and for what taxes sold ; in whose name assessed at the time of sale ; the amount for which the same was sold ; when and to whom conveyed if deeded, or if redeemed from said sale, the date of redemption.  And it shall be the duty of said assessor, whenever called upon, to furnish, in addition to the regular tax bills, a certified statement, over his hand and official seal, of all taxes and assessments, general and special, that may be due and unpaid at the time of making said certificate ; and for each and every certificate so furnished by said assessor, the party requesting the same shall pay into the Treasury of said District a fee of fifty cents ; and said certificate when furnished shall be a bar to the collection and

recovery from any subsequent purchaser of any tax or assessment omitted from and which may be a lien upon the real estate mentioned in said certificate, and said lien shall not affect the liability of the person who owned the property at the time such tax was assessed to pay the same, mentioned in said certificate. And it is hereby declared that all public records which have any reference or in any way relate to real or pesonal property in said District shall be open to the public for inspection free of charge.

"All acts or parts of acts inconsistent with any of the provisions of this act are hereby repealed."

The respondent accepted the fee and made out the statement, but refused to deliver it for no other reason than that the relator refused to furnish respondent with a ten cent revenue stamp to be affixed and canceled by him before delivery.

Assuming that this is a certificate "required by law," within the general terms of Schedule A of the War Revenue Act, approved June 13, 1898, was it the duty of the relator to furnish a stamp to the respondent, to be affixed thereto, as a condition of his right to have it issued? The answer involves the consideration of several sections and clauses of the act.

Section 6 provides that the taxes imposed upon the instruments named in Schedule A shall be paid " by any person, or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued."

Section 7 declares:

" That if any person or persons shall make, sign, or issue, or cause to be made, signed, or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon; or without having thereupon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon con-

viction thereof shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document, or paper, as aforesaid, shall not be competent evidence in any court."

The contention of the relator is, that these two sections must be considered together, and that, when so considered, the words of section 6—"or for whose use or benefit the same shall be made, signed, or issued"—can have application to those cases, only, where the instrument shall be made, signed, or issued by any person through an agent or representative.

Counsel for the Government, who represent the respondent, deny this proposition, and assuming that the certificate in this case is to be issued for the use and exclusive benefit of the relator, contend that the tax is expressly imposed upon him by the words of section 6, aforesaid. They concede, however, that were the respondent to issue the certificate without a stamp, he would become liable to the penalty imposed in section 7. They do not contend that the relator could also be punished thereunder; and it is quite plain that he could not be.

By no reasonable rule of construction, applied to section 7, could one receiving a taxable instrument without a stamp, though issued for his sole use and benefit, be regarded as having caused it to be made, signed, or issued.

It is the maker of the note, bill, certificate, or deed who delivers the same without a stamp, even though it be a mere voluntary act, that is guilty of the offense declared in section 7, and not the payee, drawee, or grantee. That the latter may not be able to make effective use, or take the complete benefit of the instrument, when so received, is due to other and independent provisions of the act.

We do not accede to the proposition that it is clear that these certificates of unpaid taxes issue solely for the benefit of those who apply for them. They possibly facilitate the collection of back taxes, and they do furnish some revenue;

for the report of the auditor for the year ending June 30, 1898, shows a credit of $2,456.50 to their account. It may be added that the respondent is a salaried officer and has no interest in these fees. When collected, they are paid into the Treasury of the United States, in common with other revenues of the District, where they remain subject to appropriation by Congress.

Upon this assumption in respect of the imposition of the tax upon the usee or beneficiary of the certificate, which may be granted for the purpose of the argument, and the further necessary one that it can not lawfully be issued without the stamp, the contention is that the relator must furnish it to the respondent to be affixed before the accrual of his right to compel its delivery.

It would be unreasonable, they say, to suppose that Congress could have contemplated the payment of the tax by the District of Columbia, because, in that event, under existing law, one-half of the charge would have to be borne by the United States themselves; and the result would be the same if the cost of the stamp could be retained by the District from the charge for issuing the certificate. But this could not be done; nor is there any authority by which the District could purchase, or create a debt for the purchase of, stamps.

In our view it is unimportant whether the certificate issues for the sole use and benefit of the relator or not. When one is under a legal duty by contract, or is required by law, to execute and deliver a taxable instrument to another, who, alone, may be interested in the use to be made of it when delivered, the instrument must be stamped at or before delivery. It is not a complete, legal instrument until the stamp shall have been affixed and canceled by the maker. And the one who issues it, or causes it to be issued, without the necessary stamp, is alone guilty of the offense declared in section 7. The fact that section 7, which is

the sanction of the law, fails to include within its penalty those for whose use or benefit (in the sense we are now considering) the certificate issues, furnishes a strong foundation for the conclusion that it was not the intention in section 6 to impose the tax on them at all.

If section 6 were construed to mean that the usees and beneficiaries of taxable instruments are, under any circumstances, chargeable with the tax thereon, occasion would be given for constant contention between them and the makers in respect of the obligation to furnish the stamp, and in many instances they would be unjustly compelled to pay the tax, because unable to stand delay, or unwilling to be harassed by litigation over a small or trifling sum. And if section 7 followed the same terms, or otherwise expressed the same meaning, prosecutions under it would be attended with the difficulty and risk of ascertaining, in each case, for whose use or benefit the instrument had been made, signed or issued; for it is plain that both maker and receiver can not be separately guilty of the one offense, any more than they can both be made to pay the same tax. The argument on behalf of the respondent does not meet all of the difficulties of the situation. In the first place, as we have seen, it concedes that the maker of the unstamped instrument is subject to the penalty in any event. In the second, it assumes that the certificate must be stamped, before delivery, to enable the respondent to escape the penalty. Then, because Congress has made no provision for the purchase of the stamp by the District, and can not otherwise be presumed guilty of the absurdity of making the United States, themselves, pay the tax, in part, by virtue of the existing arrangement respecting the revenues and the expenses of the District, the burden must have been intended to be imposed upon the relator and others similarly situated.

This conclusion can not be reached without reading a

proviso into the law, or, at least, without a strained construction that is clearly not admissible, under any circumstances, in the case of laws imposing duties and affixing penalties.

"Laws imposing duties are never construed beyond the natural import of the language; and duties are never imposed upon doubtful interpretations; for every duty imposes ·a burden upon the public at large, and is construed strictly, and must be made out in a clear and determinate manner from the language of the statute." *Adams* v. *Bancroft,* 3 Sumner, 384, 387.    See, also, *Hartranft* v. *Weigmann,* 121 U. S. 609, 616; *American Net and Twine Co* v. *Worthington,* 141 U. S. 468, 474.

Some of the conditions mentioned in the argument above · referred to are entitled to considerable weight in determin- .ing whether the certificate in this case is taxable at all.

.   For the reason that Congress did not intend, as we have concluded, to make any one but the maker of the instruments referred to in section 6 liable for the tax, and because of the special considerations referred to as applying in this particular case, we think it would be reasonable to presume that it was not intended to require a stamp to be affixed to an instrument where, as here, the officer of the District is compelled to issue upon demand, and the fee for the service is not his perquisite.

This conclusion is made clear by one of the provisos of section 17, as follows:

"Provided, That it is the intent hereby to exempt from the stamp taxes imposed by this act such State, county, town, or other municipal corporations in the exercise only of functions strictly belonging to them in their ordinary, governmental, taxing, or municipal capacity."

This and others were evidently inserted in the act to bring its operation within constitutional limitations that had been declared by the Supreme Court of the United States in the course of construction of the War Revenue Act

of 1864. *United States* v. *Railroad Co.*, 17 Wall. 322, and other cases cited therein.

It was said in that case:

"The power of taxation by the Federal Government upon the subjects and in the manner prescribed by the act we are considering is undoubted. There are, however, certain departments which are excepted from the general power. The right of the States to administer their own affairs through their legislative, executive, and judicial departments, in their own manner through their own agencies, is conceded by the uniform decisions of this court and by the practice of the Federal Government from its organization. This carries with it an exemption of those agencies and instruments from the taxing power of the Federal Government. If they may be taxed lightly, they may be taxed heavily; if justly, oppressively. Their operation may be impeded and may be destroyed, if any interference is permitted. Hence, the beginning of such taxation is not allowed on the one side, is not claimed on the other."

The city of Baltimore, which was declared to be not only "a representative of the State" of Maryland, but also "a portion of its governmental power," had issued its bonds as a loan in aid of the construction of the Baltimore and Ohio Railway Company, long prior to 1864, and had taken a mortgage from said company to secure itself in the payment of the principal and the stipulated instalments of interest. The suit was brought to recover of the railway company 5 per cent. of the said instalments of interest, under the provisions of section 122 of the Act of 1864, which imposed that rate as a tax thereon, and required it to be retained by the railway company and paid over, on account of the bondholders, to the collector of the United States. It was held that the loan of the city was made in the exercise of its municipal powers and duties, and was, therefore, not within the taxing power of the Federal Government. A proviso inserted in that act by amendment in 1866, substantially

like the one under consideration here, was held to be declaratory merely of the limit imposed by the Constitution.

The District of Columbia is unquestionably a municipal corporation. *Metropolitan Railroad Co.* v. *District of Columbia,* 132 U. S. 1, 7. Consequently, it is entitled to the benefit of the exemption declared in favor of States, counties, towns, and "other municipal corporations."

The fact that the issuance of the certificate in this case is commanded by law upon the payment of the required fee, and is in some measure productive of revenue to the corporation, is enough, we think, to bring it under the exemption.

We think it unnecessary for the purposes of this case to attempt to draw the line of distinction between the different acts of a municipal corporation that may and may not be in the exercise of the ordinary governmental, taxing, or municipal capacity.

As was well said by Attorney General Hoar, in an opinion upon the question afterwards raised and decided in the Baltimore case above cited:

"To attempt to separate those functions of a municipal corporation which are of a private nature from those which are public and political, and apply the internal revenue laws to the former, and to compel such a corporation to obey those laws, would be attended with such practical difficulties, and might involve such an interference with the affairs of towns and cities by the United States, that an intention to do so on the part of Congress ought not to be presumed from doubtful expressions." 13 Op. Attys. Genl. 67, 76.

Our conclusion is, that no stamp is required to be affixed to the certificate, and that it is the duty of the respondent to deliver it to the relator.

It follows that the judgment must be reversed and the cause remanded with direction to issue the writ of *mandamus* as prayed for in relator's petition.          *Reversed.*