UNITED STATES v. OWENS.

(District Court, E. D. Missouri.   March 3, 1900.)

INTERNAL REVENUE—STAMP TAX—BONDS OF SALOON KEEPERS.

The bond required to be given by a saloon keeper by the statutes of Missouri, as one of the conditions of the granting by the state of a license, and which is conditioned for the faithful observance of all the requirements of such statutes by the licensee, is an instrumentality employed by the state to execute and enforce its own laws enacted in the exercise of its police powers, which cannot be taxed by the federal government, and such bonds do not require an internal revenue stamp, under the war revenue act of 1898.

On Demurrer to Information.

Edward A. Rozier, U. S. Atty.
E. C. Tittman, for defendant.

ADAMS, District Judge.   The question presented by the demurrer to the information in this case is whether a dramshop keeper's bond, given pursuant to the provisions of the law of the state of Missouri, is subject to the stamp tax of 50 cents imposed by the war revenue act of June 13, 1898 (inter alia), upon all "bonds of any description, except such as may be required in legal proceedings not otherwise provided for in this section." If this bond is the means or instrumentality employed by the state in the administration of its governmental function, it is not taxable by the federal government. The supreme court of the United States in the case of Collector v. Day, 11 Wall. 113, 20 L. Ed. 122, in quoting from Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482, says:

"The reserved rights of the states, such as the right to pass laws, to give effect to laws through executive action, to administer justice through the courts, and to employ all necessary agencies for legitimate purposes of state government, are not proper subjects of the taxing power of congress."

In the case of U. S. v. Baltimore & O. R. Co., 17 Wall. 322, 21 L. Ed. 597, the supreme court says:

"The right of the states to administer their own affairs through their own legislative, executive, and judicial departments, in their own way, and through their own agencies, is conceded by the uniform decisions of this court, and by the practice of the federal government from its organization. This carries with it an exemption of those agencies and instruments from the taxing power of the federal government. If they may be taxed lightly, they may be taxed heavily; if justly, oppressively. Their operation may be impeded, and may be destroyed, if any interference is permitted. Hence the beginning of such taxation is not allowed on the one side; is not claimed on the other."

The foregoing strong expressions of the supreme court are but affirmations of the great principles originally declared by Chief Justice Marshall in the leading case of McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579.   These cases, and many others to which reference might be made, establish the principle that the great law of self-preservation, the inherent attribute of sovereignty, exempts any and all means or instrumentalities of state governments from federal taxation in the same way and manner as it exempts any and all means or instrumentalities of the federal government from state tax-

ation. "The power to tax involves," as Chief Justice Marshall says, "the power to destroy." If, therefore, the bond in question is an agency or means or instrumentality employed by the state of Missouri to execute or enforce its own laws, it is not taxable by the federal government.

Now, what is the purpose of the bond? Its condition is as follows:

"If the said J. L. Owens shall keep at all times an orderly house; and shall not sell, give away, or otherwise dispose of, or suffer the same to be done, about his premises, any intoxicating liquors, in any quantity, to any minor, without the written consent of the parents, master, or guardian of such minor; and if he shall not violate any of the provisions of article 6, c. 37, Revised Ordinances of the City of St. Louis, approved April 12, 1887, and amendments thereto, or any of the provisions of Session Acts of the General Assembly of the State of Missouri, and amendments thereto, approved April 20, 1891, relative to dramshops; and if he shall pay all fines, penalties, and forfeitures that may be adjudged against him under the provisions of said ordinances, and of said chapter and amendment thereto,—then this obligation shall be void; otherwise, in full force."

The act of Missouri referred to in the condition of the bond is a recognition of a well-known fact, of which courts may properly take judicial cognizance, that the liquor traffic is an evil which cannot be suppressed, but which may be regulated, and kept within less harmful limits. The act (inter alia) permits no one to enter into the business without the consent of a majority of the taxpaying citizens of the block in which it is proposed to conduct it; provides for biennial statements of the quantity of liquors received; subjects the proprietor to heavy taxes; prohibits the sale of liquors to drunkards and minors; prohibits the sale of liquors to any parties on Sundays, or days on which general elections are held; provides for the conduct of the business in such a way as to keep an orderly house; subjects the proprietor to the payment of heavy taxes in the shape of license fees for carrying on the business; and subjects him to diverse fines and penalties for violating any of the provisions of the act; and last, but not least, provides for the execution by the proprietor, with two or more sufficient sureties, of a bond in the penal sum of $2,000, conditioned for the faithful performance of each and all the provisions of the act, and the payment of all taxes imposed by the act, and of all fines and penalties incurred under the act. Upon the execution of such a bond, a license is granted by the state. This legislation is one of the highest expressions of the exercise of the police power of sovereignty residing in the state. It deals with a subject intimately related to the health, welfare, and safety of the people, and is the subject-matter of exclusive cognizance by the state, with the exercise of which, outside of certain limitations not necessary to be now stated, the federal government cannot interfere. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Kansas v. Ziebold, Id.

In this legislative scheme the giving of the bond is a condition to the grant of the license. The license itself does not express the entire contract between the state and the dramshop keeper. It is only that term of the contract expressive of the act of the state. The other term is found in the bond itself, which expresses the as-

sent of the applicant for the license to the condition imposed by the state. The two, taken together, constitute the contract or license, with all its limitations and conditions. Not only so, but the bond, with the added guaranty of two or more resident sureties, affords a ready instrumentality or means for enforcing the provisions of the act. It stands as a constant monitor to the dramshop keeper to keep within the terms of the law, and insures, in case of default on his part, the prompt payment of all fines, penalties, and taxes which may be imposed upon him, as well as all damages arising out of any violation of the terms of the act.

The proposition that the saloon business is not itself a governmental agency may readily be conceded, but it does not follow, and cannot be true, that the means adopted by the state for the regulation of this business, in the way of throwing safeguards about it for the public welfare, are not governmental agencies. They, in my opinion, clearly fall within the reserved right of the state to legislate in the exercise of its police power for the safety, welfare, and health of the community, and as such are not taxable by the federal government.

It is conceded that the state's license to a dramshop keeper cannot be taxed. This concession, in my opinion, ends the case. The bond, as already seen, is a part of the license; it is the assent to the condition on which the license is granted; it is the agreement of the party of the second part to the terms of the grant; it is a compliance with the provisions of the act of the state, to furnish security for the safe conduct of a dangerous business. But, whether the bond be properly treated as a part of the license or not, it must, in my opinion, be regarded as a means or instrumentality employed by the state in the execution of one of its most important functions, namely, preserving the peace, and enforcing its laws relating to the health, safety, and morals of its citizens, and as such cannot, on the authority of the cases cited, be the subject of taxation by the federal government. I have limited this opinion to a consideration of the public act of the state, and have not considered the provisions of the ordinance of the city of St. Louis to which my attention was called in argument, because of the fact that the court cannot take judicial cognizance of the provisions of a municipal ordinance, and, as this case is heard on demurrer, it must be disposed of in the light of the state statute alone. The demurrer to the information is sustained.