## In re FOWBLE.

(District Court, D. Maryland. May 6, 1914.)

1. MECHANICS' LIENS (§ 13*)—PROPERTY SUBJECT—PUBLIC PROPERTY.

   Notwithstanding Code Pub. Civ. Laws Md. art. 63, § 1, providing that "every building" erected, repaired, etc., shall be subject to a lien for the payment of debts contracted for labor and materials, and section 41 providing that such article shall be construed as laws which are remedial in their nature, no special mention being made of the state, lands or buildings of the state are not subject to mechanics' liens, especially as, in Maryland, municipal property is not liable to be taken on execution; it being the rule that, where this is true, such property is exempt from mechanics' liens.

   [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 14, 15; Dec. Dig. § 13.*]

2. STATES (§ 108½*)—RIGHT TO FUND DUE CONTRACTOR.

   Code Pub. Civ. Laws Md. art. 63, § 13, providing that where a contractor or builder of a house shall have purchased materials or contracted for work, and the party with whom such contract is made shall have given notice to the owner of his intention to claim a lien, it shall be lawful for the owner to retain from the cost of the building the amount due such party, and section 20 providing that, where a claim is filed by a contractor or builder who is indebted for work or materials, the persons to whom he may be indebted shall have the benefit of the lien and by petition may claim the amount due them out of the money to be received for such lien, did not entitle parties furnishing materials to a contractor with the state for the construction of a building, who attempted to perfect mechanics' liens, to the fund due the contractor in preference to his general creditors, as they only apply where a lien may be secured.

   [Ed. Note.—For other cases, see States, Dec. Dig. § 108½.*]

3. SUBROGATION (§ 21*)—RIGHT TO FUND DUE CONTRACTOR.

   Parties furnishing materials to a contractor for use in the construction of a building for the state were not entitled to the fund due the contractor in preference to his general creditors under the doctrine of subrogation, as one seeking the benefits of that doctrine must have paid a debt due a third party from compulsion and not as a mere volunteer, and such materialmen were not compelled to pay a debt due by another and had not paid any such debt by compulsion or otherwise.

   [Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 47; Dec. Dig. § 21.*]

4. STATES (§ 101*)—CONTRACTOR'S BOND—SURETY—LIABILITY TO MATERIAL-MEN.

   Where a bond given to secure performance of a building contract with the state expressly provided that the surety should not be liable to any one except the owner, it was not liable to parties furnishing materials to the contractor for the amount of their claims.

   [Ed. Note.—For other cases, see States, Cent. Dig. § 98; Dec. Dig. § 101.*]

5. SUBROGATION (§§ 8, 33*)—SURETY—PAYMENT FOR MATERIALS.

   Where a surety on a bond given to secure performance of a building contract within a specified time, to secure the delivery of materials and

prevent loss and delay which might have damaged it, guaranteed the bill to the materialman, who refused otherwise to deliver the materials, it was subrogated to the contractor's rights against the owner, and was entitled to the fund due the contractor in preference to his general creditors.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 19, 96–98; Dec. Dig. §§ 8, 33.*]

6. ASSIGNMENTS (§ 48*)—BUILDING CONTRACTS—RIGHTS OF MATERIALMEN.

Where a bond given to a state to secure performance of a building contract provided that the surety should not be liable to any one except the state, an agreement between it and the contractor requiring the contractor to deposit payments by the state with a trust company selected by the surety, and not to use them on account of other contracts, until the contract in question was completed and all materials and labor paid, did not amount to an equitable assignment of all funds received from the state in trust for the benefit of laborers and materialmen; the surety not intending to make itself a trustee for materialmen.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 133; Dec. Dig. § 48.*]

7. BANKRUPTCY (§ 345*)—CLAIMS—RIGHT TO FUND DUE CONTRACTOR.

Persons furnishing material to a contractor for use in the construction of a building have no claim to the amount due the contractor in preference to his general creditors, where they are not entitled to a lien under the mechanics' lien laws.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

In Bankruptcy. In the matter of John H. Fowble, bankrupt. Proceeding relative to claims of materialmen and others against a fund due the bankrupt under a building contract. Decree in accordance with the opinion.

John Milton Reifsnider, of Westminster, Md., for trustee.

F. Neal Parke, of Westminster, Md., for Springfield State Hospital.

Benjamin A. Stansbury, of Baltimore, Md., for Fidelity & Deposit Co.

German H. H. Emory and C. John Beeuwkes, both of Baltimore, Md., for lien claimants.

ROSE, District Judge. John H. Fowble is a bankrupt. He was a builder. He will be so called. The state of Maryland owns and controls an insane asylum. Its official title is the Springfield State Hospital. It will be referred to as the hospital. The controversy is over a fund of $11,709.93. The builder put up two buildings for the hospital. The fund is the balance due upon the contract price. The Fidelity & Deposit Company went on the builder's bond. It will be called the surety. Certain persons who supplied materials for the buildings are unpaid. As a class they will be described as materialmen. Some of their number have filed mechanic's lien claims against the buildings. When special reference is made to those who have done so, they will be designated as lien claimants. For convenience the state commits the management of the hospital to a board. The latter is made up of the incumbents of certain state offices and of six other

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

persons appointed by the Governor, subject to the confirmation by the Senate. They are declared to be a body corporate. In 1912 the General Assembly appropriated $175,000 for the erection of additional buildings for the hospital. The builder at an aggregate price of $83,-220 was the successful bidder for two of these. The contract provided for the protection of the hospital against any liens for which it might become liable. The builder was, of course, required to give bond. He applied to the surety. He was not thought to be financially strong. The chairman of the hospital's building committee had had in his individual capacity a large and successful experience in building operations. The president of the surety asked him what the builder would make out of the contract. He said if the work were carefully and economically done he thought there would be a profit of $6,000 or $7,000. The president of the surety thereupon said his company would furnish the bond. He added that he would require the builder to deposit with the surety all checks received from the hospital on account of the contract. The builder was not present at this interview. Subsequently, out of the presence of any one connected with the hospital, the president of the surety had a talk with him. He was told that the bond would be given, provided he first agreed in writing that all payments received under the contract would be deposited with the Fidelity Trust Company, a trust company with whom the surety's relations were intimate, and that he would not use any of the money for payments on account of other contracts until this was completed and all material and labor men on it had been paid. He assented. The understanding was put in writing and signed by him. It provided that he should have the right to do what he chose with any balance of profit left. Thereafter the bond was executed. Among other things it provided:

"The surety shall not be liable under this bond to any one except the owner, but it is agreed that the owner, in estimating his damage, may include the claims of mechanics and materialmen arising out of the performance of the contract and paid by him only when the same by the statutes of the state where the contract is to be performed are valid liens against his property."

The hospital was required to retain the last payment until the builder had finished the work in accordance with the contract and until all possibility of the properties being legally subject to any lien had passed. Before the last payment was made, the surety was to be notified in writing. No copy of the agreement between the builder and the surety was ever delivered to the hospital or as much as exhibited to any one acting for it. No formal or official action upon its part was ever requested. The surety never asked the hospital to make any payments directly to it, and none ever were so made. All parties recognized that the builder was the only person who had the right to receive or receipt for them. The surety availed itself of the good offices of the chairman of the hospital's building committee to obtain prompt information as to when such payments were likely to be made or when they had in fact been made. More it did not ask. The builder always deposited checks received with the Fidelity Trust Company. He could not withdraw the deposits so made upon his checks unless counter-

signed by one of the surety's employés. No copy of the agreement between the builder and the surety appears ever to have been shown to any materialman. To one of them the employé of the surety, who countersigned the builder's checks and who endeavored to keep in touch with the condition of the builder's affairs, expressed the opinion on at least one occasion that there would be enough money for everybody. He was not authorized by the surety to assume any obligations on its behalf to any of the materialmen, and, in point of fact, he never did so, nor with a single exception did the surety ever in any way bind itself to any of them. The builder had ordered iron work from one of them. It had made up the iron as required. It then refused to make delivery unless the surety guaranteed its bill of $650. The guaranty was given. Since bankruptcy the surety has made it good. For repayment of this sum it here asks. On its own behalf and for its own benefit it makes no other claim.

On the 19th of October, 1913, the builder was upon his own petition adjudicated a bankrupt. At that time the work on both buildings was substantially completed. Only $300 worth of work remained to be done. By agreement among all the parties the hospital had undertaken to do this work, deducting the sum of $300 from what otherwise would have been due by it. Subsequent to the adjudication in bankruptcy, the lien claimants served notices of liens upon the hospital. They took such other steps as would have been sufficient under the state law to have perfected their liens had the property of the state been subject to liens. The other materialmen claimed that the agreement of the builder with the surety amounted to an equitable assignment of all sums due or to become due for the benefit of persons furnishing labor and material. The sum due by the hospital has been paid into the registry of the court. All parties have submitted themselves to its jurisdiction.

If the surety or any of the lien claimants or other materialmen have any claim which, subsequently to the adjudication in bankruptcy, they could have in any form of proceeding successfully asserted against the fund or the property of the hospital, it is to be here held good.

## The Mechanic's Lien Claims.

[1] The pretensions set up under the mechanic's lien law cannot be sustained. Lands or buildings belonging to the state are not subject to such liens. In Maryland, municipal property is not liable to be taken on execution. Darling v. Mayor & City Council of Baltimore, 51 Md. 1. By the great weight of authority, where this is true such property is exempt from mechanic's liens. Phillips on Liens, § 179a. There are decisions to the contrary. One of them, handed down in the '70's, was from the pen of Judge, afterwards Mr. Justice, Brewer. Wilson v. School District #2, 17 Kan. 104. They have not been generally followed. In most jurisdictions the law is now clearly settled otherwise. 27 Cyc. 25. The Maryland Code, it is true, provides that "every building * * * shall be subject to a lien," and provides that mechanic's lien laws shall be construed as remedial statutes. Code 1912, art. 63, §§ 1 and 41. In none of these statutory provisions is

special mention made of the state. Upon the general rule applicable to all sovereigns, they are not binding upon it. Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706.

[2] Sections 13 and 20 of article 63 do not help the claimants. They apply to property upon which a lien may be secured, and to that only.

## Subrogation.

[3-5] The materialmen say that they rely upon the doctrine of subrogation. How it can serve them has not been made clear. He who seeks its benefits must, first, have paid a debt due to a third party before he can be substituted to that party's rights, and, second, in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in the case of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer paying a debt of one person to another. Ætna Life Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; Prairie State Bank v. United States, 164 U. S. 231, 17 Sup. Ct. 142, 41 L. Ed. 412. These materialmen have not been compelled to. pay a debt due by another and, in point of fact, have never paid any such debt, whether by compulsion or otherwise. The bond was not so conditioned as to protect the materialmen. Had it been, the surety would have been bound to pay them. Knapp v. Swaney, 56 Mich. 349, 23 N. W. 162, 56 Am. Rep. 397; St. Louis v. Von Phul, 133 Mo. 561, 34 S. W. 843, 54 Am. St. Rep. 695. Such payments would have been of debts due by the builder. Having made them, the surety would have been, to the extent of the sum so expended by it, subrogated to his rights against the hospital. Prairie State Bank v. United States, supra.

Here the bond expressly disclaimed all liability to the materialmen. They cannot hold the surety liable. The doctrine of subrogation has no application so far as concerns any of their unpaid claims. There is one case in which the surety invokes it. In order to secure the delivery of the iron work, and thus to prevent loss and delay which might have been damaging to all parties and especially to it, it guaranteed the bill therefor. It has been compelled to pay that account out of its own funds. It had bound itself that the builder should finish the work on time. If he failed to do so, it would have been liable. In giving a guaranty to prevent such failure, it was not a mere volunteer. As to the $650, expended in consequence thereof, it is subrogated to the builder's rights against the hospital. For that amount it has a claim upon the fund superior to that of the trustee.

## The Trusteeship Theory.

[6] The materialmen contend that the agreement between the builder and the surety amounted to an equitable assignment to the latter of all funds to be received from the hospital in trust for the benefit of those who might furnish labor or material for the buildings. The surety never intended to make itself a trustee for the materialmen. It did not want to assume any responsibility to them. In the bonds

it gave it expressly disclaimed all such liability. If at any time it had seen fit to modify the terms of the agreement with the builder, or to release him from it altogether, they would have had no right to complain.

### The Equitable Charge Theory.

[7] The materialmen contend that in any event they had an equity in the fund superior to that of the trustee. Most men feel that one who has contributed to the creation of anything of value stands in a peculiar relation to it. He has a special claim to be paid out of it. The mechanic and other lien laws of so many jurisdictions are the expression of that conviction. The courts, however, have not seen their way clear to make it a generally applicable principle of equitable jurisprudence. It has had its part in shaping many a rule administered in chancery, but complete recognition has been withheld from it. The difficulty, in many, if not in most cases the impossibility, of accurately and justly defining its limits have amply justified the hesitation of the courts. If mechanic's lien laws prove the strength of its appeal to an instinctive sense of natural justice, they demonstrate that it is usually impossible to apply it beyond the limits to which the statutes go.

In this case the materialmen's rights, if any, depend on the effect of the agreement between the surety and the builder. They invoke the well-settled doctrine that a third party, for whose benefit an agreement has been made, may sue upon it. He may not have been a party to it. He may even have for a long while been ignorant of its existence. True, but apparently immaterial. The agreement did not give the materialmen any right to sue the surety. It could not confer upon them any more ample rights to sue the builder than they already had.

The real contention of the materialmen is that by the agreement the builder declared a trust, for their benefit in the fund which he was to receive from the hospital. The answer will appear to have been already given.

The builder, with the consent of the surety, could at any time have changed or abrogated the agreement. It follows that it did not create any trust which the materialmen can enforce. It must be borne in mind that even the surety never sought to charge the fund in the hands of the hospital. It was content that the latter should pay the money directly to the builder.

The general rule that, in the distribution of a bankrupt's or insolvent's estate, equality is equity must prevail in the absence of any enforceable special equities in favor of the materialmen.

A decree may be submitted awarding $650 to the surety and the balance of the fund to the trustee in bankruptcy. The materialmen will, of course, have the right to file their claims as unsecured creditors.