551 A.2d 913

**JOE SHIFFLETT, INC.**

v.

**PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION.**

**No. 591, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 10, 1989.

Patricia Carmen Murray (Frank J. Emig and Dunn & Emig, P.A., on the brief), Greenbelt, for appellant.

Katherine L. Taylor (Robert M. Wright and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and BLOOM and KARWACKI, JJ.

GILBERT, Chief Judge.

Joe Shifflett, Inc., a Virginia corporation, and the Property and Casualty Insurance Guaranty Corporation (PCIGC), an entity created by the Maryland Legislature in 1971, disagree as to whether Shifflett is entitled to collect from a fund administered by PCIGC. The Circuit Court for Prince George's County agreed with PCIGC, thereby foreclosing Shifflett's claim. Dissatisfied with that result, Shifflett

asks that we reverse the judgment of the circuit court. We shall, and we herein explain why.

## The Facts

Joe Shifflett, Inc., contracted in 1984 to perform plumbing and duct work in the State of Maryland for SEICO Construction Company. SEICO had covenanted to perform certain construction for Foxglenn Associates Limited Partnership, a Maryland partnership. Foxglenn, as a condition of awarding the contract to SEICO, insisted upon a payment bond. Eastern Indemnity Company of Maryland, a surety, wrote the payment bond, naming SEICO as principal and Foxglenn as obligee. That bond undergirds this litigation.

Shifflett performed work as provided in its subcontract and submitted bills to SEICO. The latter sent checks to Shifflett which, in the vernacular, "bounced" because of insufficient funds. Shifflett promptly demanded payment from Eastern but, instead of money, received a notice of Eastern's insolvency. Shifflett then filed a claim with PCIGC. The claim was denied on the ground that the obligee, Foxglenn, was not a resident of the State of Maryland for the purposes of Md.Ann.Code art. 48A, § 505(h)(2).[1]

Shifflett then sued PCIGC in the circuit court, seeking damages of $27,405 as well as interest and costs. Both Shifflett and PCIGC moved for summary judgment. The hearing judge concluded that Shifflett was not a resident of Maryland and, therefore, was not entitled to be paid by PCIGC. The judge granted PCIGC's motion.

## The Issue

Shifflett raises two issues for our review which we distill to one: Did the hearing court err in denying appellant relief because Shifflett is not a resident of the State of Maryland?

---

1. "[A] corporation or entity whose principal place of business is in this State" is a resident within the meaning of the Code. Md.Ann.Code art. 48A, § 505(h)(2) (1986).

To solve the enigma, we must look to the purpose behind the passage of the statute.

## The Law

During the middle to late 1960's, with some spillover continuing into the early 1970's, there was a rash of casualty insurance company failures. The inevitable result was that a vast number of persons who had paid premiums for insurance suddenly found themselves without any coverage. Worse than that, many discovered that they were facing substantial liability claims that they were simply unable to defend or pay. Innocent injured individuals were left with uncollectible paper judgments. To provide a remedy for the particular societal malady caused by defunct insurance carriers, the Legislature enacted Laws 1971, Ch. 703. The avowed purpose of that statute was

> "to provide a mechanism for the prompt payment of covered claims under certain insurance policies and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer; to assist in the detection and prevention of insurer insolvencies; and to provide for the assessment of the cost of such payments and protection among insurers."

*See also* then Md.Ann.Code art. 48A, § 504(a).

The act, as originally passed, was directed to "all kinds of direct insurance, except life ..., health ..., workmen's compensation ..., annuities, and motor vehicle security fund." Laws 1971, Ch. 703, then Md.Ann.Code art. 48A, § 504(b).

Following Eastern Indemnity's financial collapse, the 1986 session of the General Assembly amended § 504(a) so that covered claims caused by Eastern's insolvency could be paid. *See* Md.Laws 1986, Ch. 440. Section 504(a) now reads:

> "(a) *Purpose*—(1) The purposes of this subtitle are to provide a mechanism for the prompt payment of covered claims under certain insurance policies and to avoid financial loss to residents of Maryland who are claimants or

policyholders of an insurer, including surety, which has become insolvent; and to provide for the assessment of the cost of such payments and protection among insurers."

*See also A.S. Abell Publ. Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068 (1983), for comment on the purpose of the Maryland Insurance Guaranty Association, PCIGC's predecessor.

As a result of the 1986 amendment, the words "covered claims" were defined in § 505(c) of art. 48A to mean:

"(c)(1) ... obligations, including unearned premiums, of an insolvent insurer which:

. . . .

[i] 2. Arise out of surety bonds issued by the insolvent insurer for the protection of third parties, who are residents of this State;

(ii) Were unpaid by the insolvent insurer;

(iii) Are presented as a claim to the receiver in this State or the Association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings;

. . . .

2. For surety bond claims arising under surety bonds issued by a domestic insurer [which] were incurred or existed prior to, on, or within 18 months after the determination of insolvency, whether or not the surety bonds are issued for no stated period or for a stated period; and

(v) Arise out of policy contracts or surety bonds of the insolvent insurer issued for the kinds of insurance to which this subtitle applies."

The statute makes transpicuous that its goal is to benefit claimants who are Maryland residents *or* policyholders who are Maryland residents. The statute contemplates PCIGC's fulfilling the obligations that the insolvent insurer should have fulfilled insofar as payment to Maryland residents is concerned. The solution to the matter before us is the

status of Foxglenn. Is it a Maryland resident within the contemplation of the statute?

■ Shifflett argues Foxglenn is a resident of Maryland [2] and that the former's claim against the surety meets the statute's definition of "covered claim," Md.Ann.Code art. 48A, § 505(c)(1)(i)2. Hence, Shifflett says, it is entitled to recover from PCIGC. The facts presented in Shifflett's brief, which stand uncontradicted, demonstrate that Foxglenn is, in fact, a Maryland resident within the statutory definition. It was formed as a Maryland limited partnership for the purposes of owning, developing, constructing, maintaining and operating residential housing properties in Prince George's County, Maryland.

Foxglenn as obligee is clearly the "third party" for whom the bond was issued. Indeed, the bond was written to protect the obligee from SEICO's nonpayment of claims, irrespective of whether they arise from resident or nonresident claimants.

■ PCIGC urges us to restrict the scope of the statute's protection to claimants who are Maryland residents. Were we to follow the urging of PCIGC, only Maryland resident claimants could recover from Maryland resident obligees, and the obligee would be left to fend for itself insofar as nonresident claimants are concerned. That construction, we think, is far too narrow and thwarts the legislative will.

We reject PCIGC's construction of the statute because we believe the act was designed to benefit claimants and policyholders who are Maryland residents. Any other interpretation of the law erodes the legislative intent.

JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.

---

2. See n. 1, *supra.*