584 A.2d 115

**WARD ELECTRONIC SERVICES, INC., et al.**

**v.**

**PROPERTY & CASUALTY INSURANCE
GUARANTY CORPORATION.**

**No. 1354, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 17, 1991.

422

John Amato, IV (Goodman, Meagher & Enoch, on the brief), Baltimore, for appellants.

Thomas J. Lee (J. Carroll Holzer, on the brief), Eldersburg, for appellee.

Argued before MOYLAN, BLOOM and JAMES S. GETTY (Retired, Specially assigned), JJ.

BLOOM, Judge.

The central issue in this expedited appeal is whether the United States Government, as the obligee of surety bonds issued by Eastern Indemnity Company of Maryland, is a resident of Maryland within the contemplation of Md.Code Ann., art. 48A, § 505. The Circuit Court for Baltimore City (Rombro, J.) answered that question in the affirmative and ordered appellants, Ward Electronic Services, Inc., John Ward, and Carmen Ward, to indemnify Property Casualty Insurance Guarantee Corp. (PCIGC) for the sum of $25,900, which PCIGC had paid to a non-resident subcontractor of Ward Electronic after the surety on the bonds became insolvent. Appellants noted this appeal, contending that PCIGC's payment of the non-resident subcontractor's claim was improper. Perceiving no reversible error, we shall affirm the judgment.

The essential facts of this case, as set forth in the agreed statement of the case, pursuant to Md.Rule 8–207, are as follows.

On 27 September 1983, Ward Electronic Services, Inc., contracted with the United States Department of the Army to replace a cathodic protection system for various water tanks and to provide an uninterruptible power system for building No. 1978 at Fort Meade, Maryland. As a condition of awarding the contracts, the Department of the Army insisted upon payment and performance bonds. Ward Electronic obtained the bonds from Eastern Indemnity Company of Maryland (EICOM), a Maryland corporation based in Rockville, Maryland. EICOM required Ward Electronic and

John and Carmen Ward to execute an "Agreement of Indemnity," wherein they agreed to indemnify EICOM for any loss incurred as a result of claims against the bonds.

Pursuant to an assignment agreement between Ward Electronic and EICOM, EICOM subsequently established a joint EICOM/Ward Electronic account at First Commercial Bank of Arlington, Virginia, to which all funds paid by the Army in accordance with the contracts were assigned. An initial deposit of $80,686.32 was made when the account was opened on 9 April 1984. All checks written on the account required the signatures of both Ward Electronic and EICOM.

Ward Electronic subcontracted its contract for the replacement of the cathodic protection system to Pennwalt Corporation, a Pennsylvania Corporation. Upon completion of its performance obligations, Pennwalt filed a claim with EICOM for $26,000, which was approved by both EICOM and Ward Electronic. A check for $26,000 was issued to Pennwalt on 20 November 1984; however, when Pennwalt presented the check for payment, the check was dishonored because it did not bear an authorized signature of EICOM, as required by the joint account.

On 11 February 1985, EICOM was adjudged insolvent, and on 8 July 1985 an order of liquidation was entered. Pursuant to Md.Ann.Code art. 48A, § 508, the Property and Casualty Insurance Guaranty Corporation (PCIGC) assumed the rights and obligations of EICOM. Consequently, on 3 December 1987, PCIGC paid Pennwalt $25,900 ($26,000 less $100 deductible) in full satisfaction of its claim. Thereafter, PCIGC instituted this action in the Circuit Court for Baltimore City seeking reimbursement from appellants. Appellants disputed PCIGC's authority to pay the Pennwalt claim, arguing that the claim was not a "covered claim" because neither Pennwalt Corporation (the claimant) nor the United States Government (the obligee) is a resident of Maryland, as required by Md.Ann.Code art. 48A, § 505(c)(1)(i)(2). Appellants' motion for summary judgment

on this point was denied by the circuit court (Hollander, J.) on 5 July 1990.

At trial, appellants further argued that EICOM breached a fiduciary duty to them by failing adequately to identify the First Commercial account as a joint account, rather than as a general corporate account of EICOM. This breach, appellants argued, resulted in the seizure of $18,763.80 from the account by First Commercial, on 13 February 1985, as a setoff of the bank's claim against EICOM arising from a separate transaction. Prior to the commencement of the case *sub judice*, however, appellants recovered the funds seized by First Commercial in an action before the United States District Court for the Eastern District of Virginia. In the federal action, appellants established that the seizure of funds by the bank constituted a breach of fiduciary duty by showing that the account signature card listed Ward Electronics and that the assignment of funds agreement, which provided that the funds were collateral for a bond, had been signed by First Commercial.

Nevertheless, appellants argued in the case *sub judice* that EICOM had breached a fiduciary duty in the manner in which it created the joint account and that a *pro tanto* discharge of PCIGC's claim should be granted. On 12 July 1990, the circuit court (Rombro, J.) awarded PCIGC $25,900, plus attorney's fees of $4,000, whereupon, appellants noted this appeal.

I

Md.Ann.Code, art. 48A, §§ 504 through 519, provides that PCIGC will pay "covered claims" under certain insurance policies for the benefit of Maryland residents who are claimants or policyholders of an insurer or surety that has become insolvent. The term "covered claims" is defined in § 505(c)(1), which provides in pertinent part:

"Covered claims" means obligations, including unearned premiums, of an insolvent insurer which:

. . . . .

(i)2. Arise out of surety bonds issued by the insolvent insurer for the protection of third parties, who are residents of this State;

. . . . .

Recently, in *Shifflett v. Property and Casualty*, 77 Md. App. 706, 711, 551 A.2d 913 (1989), we held that the term "third parties," as mentioned in § 505(c)(1)(i)(2), includes the creditor and the obligee. Speaking for this Court, Chief Judge Gilbert stated:

The statute makes transpicuous that its goal is to benefit claimants who are Maryland residents *or* policyholders who are Maryland residents. The statute contemplates PCIGC's fulfilling the obligations that the insolvent insurer should have fulfilled insofar as payment to Maryland residents is concerned.

. . . . .

PCIGC urges us to restrict the scope of the statute's protection to claimants who are Maryland residents. Were we to follow the urging of PCIGC, only Maryland resident claimants could recover from Maryland resident obligees, and the obligee would be left to fend for itself insofar as nonresident claimants are concerned. That construction, we think, is far too narrow and thwarts the legislative will.

77 Md.App. at 710–11, 551 A.2d 913.

The parties stipulate that the claimant, Pennwalt, is not a Maryland resident; consequently, the issue before us is whether the obligee, the United States Government, is a resident of Maryland. Section 505(h) defines "resident" as follows:

(1) An individual domiciled in this State;[1]

---

1. In defining a resident as an individual domiciled in this State, the legislature utilized the reasoning of the Court of Appeals, in *Maddy v. Jones*, 230 Md. 172, 179, 186 A.2d 482 (1962), in which the Court held that the phrase " 'resident of this State' contemplates one who possesses or has acquired a domiciliary status, in the legal sense, in this State,

(2) In the case of a corporation or other entity that is not a natural person, a corporation or entity whose principal place of business is in this State.

Appellants argue that this definition precludes a determination that the United States is a resident of Maryland. Further, they rely upon *Lugo–Vina v. Pueblo Intern., Inc.,* 574 F.2d 41 (1st Cir.1978), and *Unger v. Del E. Webb Corp.,* 233 F.Supp. 713 (N.D.Cal.1964), in contending that a corporation can have only one "principal place of business" and that a "nerve center" test should be applied in determining where a corporation is principally located. Appellants assert that since the *United States Government Manual* demonstrates that the headquarters of every federal agency, save one (the Consumer Product Safety Commission), is located outside of Maryland, the United States cannot be deemed to have its principal place of business in Maryland. Therefore, appellants contend, the United States cannot be a resident of Maryland within the contemplation of § 505(h).

Neither this Court nor the Court of Appeals has heretofore been called upon to determine whether the United States Government is a resident of Maryland within the meaning of Md.Ann.Code, art. 48A, § 505(h). In *United States v. Whitcomb,* 314 F.2d 415 (4th Cir.1963), however, the Fourth Circuit held that,

The United States as a sovereign is a resident of territorial United States, and we think it not unreasonable to hold the United States to be a resident of every state.

314 F.2d at 417. Although the Court, in *Whitcomb,* was faced with a different definition of resident than the one *sub judice,* the Court's determination that the United States is a resident of every state did not rest upon the particular statutory definition of resident at issue. Rather, the Court relied upon general principles since the statute did not specifically cover the issue of the United States Government's residency.

---

as distinguished from one who merely has a temporary abode in Maryland."

The *Whitcomb* Court quoted from Mr. Justice Story, who stated in *Vaughn v. Northup*, 40 U.S. (15 Pet.) 1, 6, 10 L.Ed. 639 (1841), that "the United States, in their sovereign capacity, have no particular place of domicile, but possess, in contemplation of law, an ubiquity throughout the Union...." 314 F.2d at 417. The Court further relied upon *Helvering v. British–American Tobacco Co.*, 69 F.2d 528, 530 (2nd Cir.), *aff'd*, 293 U.S. 95, 55 S.Ct. 55, 76 L.Ed. 218 (1934), in which the Second Circuit Court of Appeals stated that "there is no difficulty with the conception that a sovereign is within the United States and it is axiomatic to say that a sovereign resides where it is sovereign." 314 F.2d at 317.

In the case *sub judice*, appellants attempt to equate the United States Government to a private corporation having one principal place of business at a specific location. We reject that proposition. The specific definition of resident contained in § 505(h) does not attempt to address the status of the federal government. Consequently, we must rely upon general principles, such as those outlined in *Whitcomb supra*, which properly recognize the United States Government to be *sui generis*, a sovereign quite distinct from a private corporation.

With the foregoing in mind, we hold that for purposes of Md.Ann.Code art. 48A, § 504, *et seq.*, the United States Government is a resident of Maryland. Consequently, the Pennwalt claim arose from surety bonds issued by EICOM for the protection of a Maryland resident obligee, the federal government, and is a "covered claim" which PCIGC was authorized to pay, pursuant to § 508(a)(1)(ii).

II

■ Appellants also contend that EICOM breached a fiduciary duty to them by failing sufficiently to designate the First Commercial account as a joint EICOM/Ward Electronic account, thereby entitling them to a *pro tanto* discharge for the funds mishandled by EICOM. In essence,

appellants argue that since PCIGC's predecessor (EICOM) was responsible for the improper seizure of funds from the account, the $18,763.80 seized by First Commercial should be subtracted from the $25,900 judgment awarded to PCIGC on the Pennwalt claim.

To establish this breach of fiduciary duty, appellants attempted to have the attorney for Ward Electronic in the federal action testify that, in his opinion, the manner in which EICOM established the First Commercial account constituted a breach of fiduciary duty. The circuit court refused to allow appellants to offer such testimony. After determining that the First Commercial account was titled "Eastern Indemnity Company of Maryland Special Bonding Account," and that First Commercial acted unlawfully in seizing the funds, the court stated,

> [T]he fact that the bank did an illegal act in taking the money out of . . . the Eastern Indemnity Special Account doesn't make Eastern Indemnity negligent and certainly doesn't make them responsible . . . under those conditions. So I think that the unfortunate thing that happened to Mr. Ward happened as a result of the action of the bank and not as a . . . result of the action of the surety, Eastern.

We perceive no error in the court's ruling. In their federal action against First Commercial, appellants recovered all of the funds that were seized from the account by the bank. Although the United States Court of Appeals for the Fourth Circuit reversed an award of punitive damages against First Commercial, the Court acknowledged that the bank failed to fulfill its duty to inquire reasonably into the true status of the account and improperly seized the funds. Therefore, to allow a *pro tanto* discharge of the funds seized by the bank *and recovered by appellants*, would effect an unconscionable windfall to appellants, who would thereby avoid full liability for Pennwalt's performance of the subcontract while retaining the benefits of that performance. Since the trial court committed no error, we shall affirm the judgment.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.